**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-1978-WJM

KELLY A. BEAUDETTE,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

     Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING TO THE COMMISSIONER**

---

     This is a social security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Kelly A. Beaudette ("Plaintiff") challenges the final decision of Defendant, the

Commissioner of Social Security ("Commissioner"), denying her application for disability

and social security benefits.  The denial was affirmed by an Administrative Law Judge

("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security

Act ("Act").  This appeal followed.

     For the reasons set forth below, the ALJ's denial of benefits is reversed and the

case is remanded to the Commissioner for rehearing.

## I.  BACKGROUND

     Plaintiff filed a claim for Disability Insurance Benefits alleging disability beginning

July 13, 2009.  (Admin. Record ("R.") at 53, 164-166). Plaintiff's claim was initially

denied on December 16, 2009, and Plaintiff requested a hearing on January 4, 2010 (R.

99-106).  ALJ Lappin held the hearing on March 24, 2011. The ALJ decision dated April

15, 2011, found the Plaintiff not disabled at Step Five of the sequential evaluation process. (R. 32-48.)  The Appeals Council denied review on July 11, 2012, making the ALJ's denial the final decision of the Commissioner.  (R. 1- 6.)  Plaintiff has sought judicial review on her claim for benefits, timely filing this appeal with the District Court.

The ALJ found Plaintiff's severe impairments, including "bipolar disorder, generalized anxiety disorder, mild lumbar degenerative disc disease with likely congenital sacralization of L5/S1, and history of cervical cryosurgery with residual incontinence."  (R. 19.)

Most of Plaintiff's treatment records are from Joseph Mataluzzo, D.O.  The earliest of these records is from August 2008, when Dr. Mataluzzo treated her for a number of ailments.  Notable in that record is that Plaintiff had "a known history of bipolar disorder," which was being treated with a medication called Depakote.  (R. 242.)

Dr. Mataluzzo continued to treat Plaintiff for slightly more than a year.  (R. 252.)  In October 2008, he opined that Plaintiff's bipolar disorder, depression, and anxiety would prevent her from working at any job, but that it would do so for less than a year.  (R. 227–28.)  In August 2009, Dr. Mataluzzo noted that he had switched Plaintiff to a new medication, Symbyax, to deal with her psychological problems .  (R. 235, 253.)  At that same time, he also noted, *inter alia*, that Plaintiff was having "bladder control issues," for which she was taking Enablex. *Id.*[1]

---

[1]  Incontinence records by treating physician Joseph Matalazzo indicate prescriptions for Enablex: March 26, 2010; January 18, 2010; October 19, 2009, R 251; October 5, 2009; and August 11, 2009 (R. 251-253.)   On October 29, 2008, Plaintiff was prescribed with Vesicare to address her overactive bladder. (R. 240.)

In October 2009, Edward Johnson, Ph.D., examined Plaintiff at the Commissioner's request. Dr. Johnson performed what he termed a "Detailed Diagnostic Interview" of Plaintiff. (R. 244.) He noted that Plaintiff's concentration appeared adequate and "she persisted effectively" with tasks that were given to her. *Id.* A formal mental status examination suggested normal cognitive functioning. *(Id.)* "However, she was unable to write a complete sentence about the weather on the day of [the] examination; and, she was unable to correctly copy a complicated geometric design." *(Id.)* Dr. Johnson also noted that Plaintiff's "emotional impulses were under-controlled" and he recorded that Plaintiff "expressed an underlying sense of personal sadness, uneasiness, and agitation." *(Id.)* Ultimately, Dr. Johnson stated that although Plaintiff appeared to have adequate mental functioning, his examination "suggest[ed] fluctuating mood, from depressed to manic, as well as a generalized sense of anxiety and excessive worry." (R. 245.) Dr. Johnson concluded that Plaintiff faced "moderate difficulties that interfered with normal occupational, social, and family functioning." *(Id.)*

In December 2009, Mark Suyeishi, Psy.D., reviewed Plaintiff's file (including Dr. Johnson's report). He concluded that, "[d]epending on [her] mood, [Plaintiff's] anxiety could possibly affect [sic] her ability to stay focused but not to the extend of compromising her competency." (R. 96.) He further concluded that Plaintiff remained capable of "Lower Level Semi-Skilled Work"—*i.e.*, she retained the "ability to do work not involving significant complexity or judgment." (*Id.*) After several months without any documented medical treatment, Plaintiff returned to Dr. Mataluzzo in early 2010. (R. 251.) Plaintiff saw Dr. Mataluzzo six times over the next thirteen months. (R. 238, 248–51.) Each time, she appeared to primarily be seeking treatment for physical

3

complaints, including back pain. See *id.* However, Dr. Mataluzzo repeatedly noted that Symbyax was continuing to "work[] quite well." (R. 251). Medical imaging showed some congenital fusing of vertebrae in her lower back, but there were no neurological deficits. (R. 237.) The back pain was treated primarily with Vicodin. (R. 238, 253.)

On April 15, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2] At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her application date in 2009. (R. 37.) Second, the ALJ determined that Plaintiff had several severe impairments, namely "bipolar disorder, generalized anxiety disorder, mild lumbar degenerative disc disease with likely congenital sacralization of L5/S1, and history of cervical cryosurgery with residual incontinence." (R. 37.) Third, the ALJ concluded that Plaintiff's impairments did not meet or equal the criteria of any impairment listed at 20 C.F.R. pt. 404, subpart P, app. 1 (2012). (*Id.*) At the fourth and fifth steps, the ALJ relied on vocational expert testimony to find that, although Plaintiff had no past relevant work, these limitations would still allow Plaintiff to perform several jobs that were available in the national economy. The ALJ ultimately found that Plaintiff has not been under a disability as defined under the statute. Plaintiff's claim for Social Security benefits was, therefore, denied. (R. 24.)

---

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## II.  STANDARD OF REVIEW

The Court reviews decisions of the Commissioner to determine (1) whether substantial evidence in the record as a whole supports the factual findings, and (2) whether the correct legal standards were applied**.**  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  *Id.*  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," a district court "meticulously examines the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  The ALJ may "not make speculative inferences from medical reports and may reject a treating physician's opinion outright *only* on the basis of contradictory medical evidence and *not* due to his or her own credibility judgments, speculation or lay opinion." (*emphasis added*.)  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.*  This duty exists even when the claimant is represented by counsel.  *Id.* at 480.

## III.  ANALYSIS

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then filed this action seeking review of that decision.  On appeal, Plaintiff raises several issues for consideration—the primary issue being whether the ALJ erred in failing to consider the effect of Plaintiff's incontinence, and speculating as to the proximity Plaintiff would need to be to restroom facilities in order to perform work as stated in the Residual Functional Capacity ("RFC") determination.[3]

Since the Court finds that the ALJ's RFC was not fully and fairly developed because it was not supported by substantial evidence, the Court finds that such error requires remand of the ALJ decision.  Because these same limitations tainted the ALJ's proposed questions to the vocational expert, the Court also finds that this related issue warrants reversal and remand for further consideration.  *See Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (recognizing that remand is appropriate where further fact finding is needed).

## A.    RFC Not Supported by Substantial Evidence and is Speculative, Preventing Full and Fair Development of the Record

Plaintiff attacks the ALJ's RFC findings by contending that the ALJ (1) failed in her duty to recontact the treating physician with respect to Plaintiff's incontinence symptoms, and (2) made an RFC finding based on this symptom that was speculative and beyond what was proffered by medical evidence in the record.  (ECF No. 13 at 21-22.)  Plaintiff contends that, without explanation, these failings constitute error

---

[3] As noted later, the Court expresses no opinion as to the other issues identified by Plaintiff in briefing, but encourages the parties as well as the ALJ, to consider the evidence and issues anew on remand.

warranting reversal and remand. (*Id.*)

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1).  The RFC is an assessment of the most a claimant can do despite his or her limitations.  *Id.*  Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs, laboratory findings, and medical source statements. Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996).  An ALJ must make specific RFC findings based on all of the relevant evidence in the case record.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996):

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain *how any material inconsistencies or ambiguities* in the evidence in the case record were considered and resolved. (*emphasis added.*)

SSR 96–8p.  *See also Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).[4]

--------------------------------

[4] The ALJ found that Plaintiff had the following Residual Functional Capacity:

> Able to lift and carry 20 pounds occasionally and 10 pounds frequently, can sit for one hour uninterrupted for a total of six hours in an eight hour workday, and stand and/or walk for 30 minutes uninterrupted for a total of six hours in an eight hour workday. The Plaintiff can frequently balance, stoop, crouch, kneel, crawl, and climb, and requires proximity to restroom facilities accessible within one to two minutes of normal walking. As for mental limitations, the Plaintiff can understand and remember simple, routine instructions, is able to sustain attention for two hour blocks throughout an eight hour workday, is able to complete assigned tasks with ordinary supervision, and is able to exercise sufficient judgment to make basic work-related decisions. The Plaintiff can have no public interaction, occasional public contact, and is able to interact

Plaintiff challenges the ALJ's RFC determination that Plaintiff "requires proximity to restroom facilities accessible within one to two minutes of normal walking" (R. 40.) Plaintiff's submits that the ALJ erred because of, *inter alia*, over-reliance on credibility determinations rather than the medical evidence that was in the record (or could have been supplemented by further questioning of the treating physician to mitigate any ambiguity as to Plaintiff's incontinence symptoms). (*Id.*) The Court finds merit in Plaintiff's submission. The reasons are two-fold. First, there is nothing the record to support the relevant RFC finding. On the contrary, the medical evidence of the treating physician, *inter alia*, indicated an overactive bladder and the clear need for medication to assist with Plaintiff's symptoms. (R. 238, 248–51.) And while the ALJ afforded little weight[5] to his opinion, medical evidence from Dr. Mataluzzo is the only *real* evidence that goes to incontinence issue—other than, of course, Plaintiff's own testimony that she would be required to frequent the restroom facilities upwards of ten times a night, *inter alia*, and had accidents every two weeks because of her incontinence condition. (R. 42.)

---

appropriately with supervisors and coworkers provided neither is frequent nor prolonged.

(R. at 40.)

[5] The Court notes that there is no real explanation as why the treating physician was given little weight notwithstanding that a treating physician is typically afforded controlling weight. Given that a treating physician cannot be rejected outright, and that the Court holds that Dr. Mataluzzo should be re-contacted to provide further evidence, the ALJ should also reconsider the relevant factors applied when discounting the weight afforded to such evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (stating that "after considering the pertinent factors, the ALJ must give good reasons in the decision for the weight he ultimately assigns the opinion."); *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir.1988) Ultimately, though, the weight afforded to Dr. Mataluzzo is the province of the ALJ.

In light of the above, the Court finds that the RFC determination—with respect to the need to locate Plaintiff within one to two minutes of restroom facilities—is not based on substantial evidence. Because of this, the Court finds that the RFC is speculative and warrants reversal and remand for further consideration. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (stating that an ALJ may "not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.") *See also Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *White v. Barnhart*, 287 F.2d 907, 909 (10th Cir. 2001).

Second, and related to the first, the ALJ erred in her duty to recontact the treating physician—a duty that rests entirely with the ALJ.   Indeed, it is the inadequacy of the record, and not the rejection of Dr. Matalazzo's opinion, that triggers the duty to recontact him—ever more so where ambiguities may exist. *See White v. Barnhart*, 287 F.2d 907, 909 (10th Cir. 2001); *White v. Massanari*, 271 F.3d 1256, 1261(10th Cir. 2001) citing 20 C.F.R. § 416.912(e); 20 C.F.R. § 404.1512(e); SSR 96-5p.  Here there is nothing in the record to support the RFC determination.  At best, there is an ambiguity; but even this should have prompted the ALJ to seek further evidence from the treating physician to fully and fairly develop the record.  The Court finds as much. *See Baca*, 5 F.3d at 480 (stating that the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues").

Accordingly, the ALJ has erred for the reasons stated above.  Because of these errors, the Court finds that the RFC finding warrants reversal and remand for further consideration. *Flaherty*, 515 F.3d at 1070 (stating that a district court "meticulously

9

examines the record as a whole, including anything that may undercut or detract from the ALJ's findings").

### B.     The ALJ's hypothetical questions to the vocational expert did not precisely reflect Plaintiff's limitations

As addressed above, the RFC contains a limitation that each job requires proximity to restroom facilities accessible within one to two minutes.  (R. 40).  Plaintiff contends that the ALJ erred with respect to the hypothetical questions proposed to the vocational expert because they did not reasonably reflect Plaintiff's limitations.[6]  (ECF No.13 at 7-8, 23. )  Such error, Plaintiff says, derives from the RFC determination.  The Court agrees.

As noted in *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996), when deficiencies in the RFC finding are also carried over into the hypothetical questions proposed to the vocational expert at step five of the analysis, this results in a defective VE determination as to the plaintiff's abilities to do work in the existing economy.   The logic then follows that because the VE questions are defective, the ALJ errs on the basis that its step five analysis lacks precision as to all of a plaintiff's proper medical limitations.  *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (stating that "testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")

---

[6]  The Court also observes that the ALJ's summary of the Plaintiff's testimony included that Plaintiff required the use of the restroom 11 to 12 times per day and that she had accidents once every two weeks because she was unable to make it to the restroom (R 41). Notwithstanding this, there is no mention of these medical issues in the RFC.

Here, the problems identified in *Winfrey* and *Hargis* are equally present in the instant case.  Like those cases, the ALJ's questions here lack precision.  To buttress this view, the Court incorporates by reference the deficiencies discussed above with regard to the RFC analysis in Section II. A.  There, the Court stated that there is *nothing in the record* to support the finding that Plaintiff need only be one to two minutes from restroom facilities to do work in the existing economy.  Thus, because the ALJ did not provide the vocational expert with the correct questions (because it did contained speculative limitations in the RFC determination), this misled, or, at best, would have confused the vocational expert.

The Court concludes that because the ALJ's omission is material (*i.e.* not precise as to the limitations proscribed by the evidence), it is sufficient to taint the substantiality of the vocational expert's testimony.  *Hargis*, 945 F.2d at 1492.  And since the evidence is tainted, substantial evidence is lacking in this case for the ALJ to have made the correct determination as to Plaintiff's claim to disability benefits at step five of the analysis. The Court finds that remand is required to resolve these deficiencies.[7] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

C.      **Harmless Error**

Finally, it is worth addressing the fact that Commissioner's seems to argue that harmless error doctrine applies—notwithstanding the abovementioned deficiencies.

Courts apply harmless error cautiously in the administrative review setting.

---

[7]  The Court notes that upon remand the ALJ should specifically contact Dr. Matalazzo regarding Plaintiff's "frequency, urgency, or accidents due to incontinence and the effect this would have on her attendance, tardiness, need for unscheduled breaks and the effect on other work."  (ECF No. 13 at 27.)

*Fischer-Ross.*, 431 F.3d at 733.  An error is only harmless when the Court can "confidently say that no reasonable administrative fact-finder, following the correct analysis, could have resolved the factual matter in any other way.' *Id.* at 733-34; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (stating that courts must  "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

Here, the Court has no confidence that the factually-deficient RFC determination (which also infected the VE questions) could be resolved another way because the deficiencies are not even based on a scintilla of medical evidence as reasoned in Section II. A. *See Lax*, 489 F.3d at 1084.  Indeed, what evidence there is in the record from the treating physician tends to point away from the RFC determination regarding Plaintiff's incontinence symptoms.   The ALJ's error is *not* harmless because the jobs identified by the vocational expert are not predicated on the correct limitations that derive from a correct RFC determination. These errors are anything but harmless.  Indeed, the Court finds this type of error is more toward the significant end of the spectrum which does nothing to save the decision from remand.

D.     **Remaining Arguments**

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. But because the Court finds that the ALJ's RFC was not supported by substantial evidence, *inter alia*, above, it need not address the other arguments raised by Plaintiff.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered.  It is entirely possible that, given the passage of time and the positive manner in which it appeared Plaintiff's life was changing as of the hearing before the ALJ, the ALJ could

arrive at the same conclusion and find that Plaintiff is not disabled.[8]  But, for the reasons stated earlier, it is critical that the ALJ fulfill her duty in recontacting the treating physician to substantiate any further findings regarding (1) Plaintiff's incontinence condition, and (2) the affect it has on her ability to perform work.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Dated this 29th day of July, 2013.

BY THE COURT:

William J. Martinez
United States District Judge

---

[8] The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties, as well as the ALJ, to consider the evidence and the issues anew. The regulations require that the ALJ must evaluate every medical opinion in the record, *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). For example, Plaintiff contends that the ALJ did not consider the medical records regarding Plaintiff's back pain.  (ECF No. 13 at 30.)  To the extent that this issue has merit, this issue, among others raised in Plaintiff's briefing, should be addressed anew.